394 So.2d 433 (1980)
STATE of Florida, Appellant,
v.
Edwin Ray MOYER, Appellee.
No. 79-1956.
District Court of Appeal of Florida, Second District.
December 10, 1980.
Rehearing Denied February 24, 1981.
*434 Jim Smith, Atty. Gen., Tallahassee, and Michael A. Palecki, and G.P. Waldbart, Asst. Attys. Gen., Tampa, for appellant.
Sondra Goldenfarb, Clearwater, and Joseph G. Donahey, Jr., of Tanney, Forde, Donahey, Eno & Mills, Clearwater, for appellee.
CARLTON, CHARLES T., Associate Judge.
The State of Florida brings this appeal from an order entered by the Circuit Court of Pinellas County, Florida, granting defendant's motion to suppress the evidence in a prosecution for conspiracy to sell cocaine, conspiracy to possess cocaine, and possession of marijuana.
On May 8, 1979, a confidential informer with no previously known reliability attempted to arrange the purchase of one pound of cocaine from appellee Edwin Ray Moyer for the Clearwater Police Department. That same morning the police were informed by the confidential informant of the approximate time and location of the proposed cocaine sale. On the same date, at about 4:00 P.M., the confidential informant contacted the police about the tentative transaction. The Clearwater Police Department had intended to put up $26,000 to purchase the contraband; however, the police could not provide the money for the controlled purchase because other investigations had exhausted their funds.
At 5:30 P.M., the police set up their surveillance of appellee's residence. Between the hours of 6:30 P.M. and 7:30 P.M. the confidential informer was "bugged" with an electronic communications device and entered appellee's residence to make plans to finalize the transaction. The police listened to the conversation between the confidential informant and appellee. The gist of the conversation was that the confidential informer could either buy a small quantity of cocaine and take it to the "money man" for testing, or the "money man" could come to appellee's house and test it. The confidential informant did not know what to do, so he left.
Within 45 minutes the police observed Murray C. Mallory arrive at appellee's residence in a pickup truck and enter. Mallory carried with him a tool box and a brown paper bag. Approximately 10 minutes after Mallory's arrival, the confidential informer received a telephone call from appellee stating that the man with the cocaine had arrived at appellee's residence.
Again, the confidential informer was equipped with a "body bug" and made his second visit to appellee's residence. The police overheard a conversation wherein a voice, presumed to be Mallory's told the confidential informer that there would be no samples and that he, Mallory, was only going to be there fifteen minutes and that the confidential informer should produce the man with the money. The confidential informer departed. The prearranged procedure had called for a plainclothes detective to pose as the "money man". He would carry an empty briefcase to appellee's residence with the confidential informant. After learning that the police did not have the money to pay for the cocaine, the confidential informer got "shaky" and refused to go along with the plan. At that time the police determined that they had enough evidence for a conspiracy charge against the appellee and Mallory. They decided to make an immediate arrest on the conspiracy charge at appellee's residence.
Five police officers approached the residence. As they neared the house, appellee came out the front door. One the police officers placed appellee under arrest in the front yard. Between 30 seconds and 2 minutes after the arrest, the officers reached the front door. One of the detectives opened the door and yelled, "Police. Halt!" *435 The detectives could smell the odor of marijuana and heard someone running through the house. The State conceded that they did not comply with the "knock and announce" Statute, Section 901.19, Florida Statutes (1979). Mallory ran to the bathroom and locked the door. The detectives broke the door down and observed Mallory attempting to dispose of the cocaine by dumping the plastic bag of cocaine under hot water. Mallory was placed under arrest. Police officers also seized marijuana which they observed in the house. The entry into the house and the seizure occurred between 8:30 and 9:00 P.M.
The trial court granted appellee's motion to suppress the evidence because of the police officers' failure to secure a search warrant. The State's appeal followed.
The issue on this appeal is whether there were exigent circumstances sufficient to justify a warrantless entry into appellee's house.
Exigent circumstances will justify a warrantless entry into a home for the purpose of either an arrest or a search. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In Benefield v. State, 160 So.2d 706 (Fla. 1964), the Florida Supreme Court held that exigent circumstances exist where those within a house are made aware of the presence of someone outside, and are engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted. Nevertheless, "[l]aw enforcement officers may not sit and wait ... (when they could be seeking a warrant), then utilize their self-imposed delay to create exigent circumstances." Hornblower v. State, 351 So.2d 716, 717 (Fla. 1977); Wilson v. State, 363 So.2d 1146 (Fla.2d DCA 1978). The critical issue in Hornblower and Wilson was the length of time which elapsed from the time probable cause vested until the warrantless search. The courts held that 45 minutes in Hornblower and six hours in Wilson were unreasonable lengths of time and thus the warrantless searches were unjustified.
We are of the opinion that probable cause vested only after the following facts and circumstances in their entirety were within the knowledge of the police: 1) a confidential informant with no previously known reliability set up a drug buy; 2) the informant, wearing a body bug, finalized drug negotiations on his first visit with appellee; 3) forty-five minutes after the informant's first visit, he was called by appellee and told that the man had arrived with the cocaine; 4) surveillance confirmed that after the informant's first visit a man in a pickup truck arrived and entered appellee's residence carrying a tool box and a brown paper bag; 5) upon the informant's second visit to appellee's residence, and while still using a body bug, the informant was told: a) the cocaine is here, have your money man come inside, b) a sample will be shown, c) appellee will leave in 15 minutes; he is anxious to depart. The exigent circumstances arose when the police knew that Mallory was going to leave in fifteen minutes with the evidence. This unexpected development left no time for the police to secure a search warrant.
The officers were well justified in their belief that a destruction of the evidence was being attempted. As noted in State v. Clarke, 242 So.2d 791 (Fla.4th DCA 1970), Berryman v. State, 368 So.2d 893 (Fla. 4th DCA 1979), and State v. Johnson, 372 So.2d 536 (Fla. 4th DCA 1979), police may enter without a warrant where the facts show reasonable grounds to fear destruction of the evidence. The record clearly indicates that the officers involved in the investigation were experienced and were familiar with an easily destructible substance-cocaine. Further, the "knock and announce" law does not apply to the exigent circumstances. Benefield v. State, supra.
The short period of time between the vesting of probable cause and the development of exigent circumstances negates any and all assertions that the police were able to obtain a search warrant. Accordingly, the lower court erred in granting appellee's motion to suppress based on a warrantless search. The cause is, therefore, REVERSED *436 and REMANDED for further proceedings consistent with this opinion.
HOBSON, Acting C.J., and RYDER, J., concur.